UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WAY SYSTEMS, INC., ) <br> ) CIVIL ACTION <br> Plaintiff, ) NO. 05-10897-JLT <br> ) <br> v. ) <br> ) **AMENDED COMPLAINT AND JURY DEMAND** <br> FRACTAL COMMERCE, INC. ) <br> AND KEITH BENSON, ) <br> ) <br> Defendants. ) | |

## BACKGROUND

1. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201. The Plaintiff WAY Systems, Inc. ("WAY") seeks a declaratory judgment that WAY – not Defendant Fractal Commerce, Inc. ("Fractal") or Defendant Keith Benson ("Benson") – is the rightful owner, and its employees the rightful inventors, of technologies identified in various United States patent applications that WAY has filed and of any patents that issue from those applications. In addition, Fractal and Benson have engaged in oppressive and coercive conduct, repeatedly threatening to put WAY out of business unless WAY agrees to execute a burdensome and highly detrimental amendment to the existing License Agreement between the parties. WAY also seeks preliminary and/or permanent injunctive relief ordering Fractal and Benson to refrain from taking any actions that are inconsistent with WAY's rights under the License Agreement. Finally, WAY seeks to recover damages caused by the Defendants' breach of the covenant of good faith and fair dealing, breach of contract, and violations of Massachusetts General Laws chapter 93A.

## PARTIES

2. Plaintiff WAY is a Delaware corporation with a principal place of business at 200 Unicorn Park, Woburn, Massachusetts.

3. Upon information and belief, Defendant Fractal is a Delaware corporation with a principal place of business at 1931 Crescent Park Drive, Reston, Virginia.

4. Upon information and belief, Defendant Benson is the President of Fractal and resides in Virginia.

## JURISDICTION AND VENUE

5. This Court's jurisdiction is established pursuant to 28 U.S.C. § 1338(a), as a controversy exists as to inventorship of technologies identified in WAY's pending patent applications, thereby implicating 35 U.S.C. §116.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(2).

## BACKGROUND FACTS

7. WAY is a developer, manufacturer, and seller of mobile transaction terminal (MTT) solutions. MTTs allow merchants to process payment card transactions anywhere using a low cost, convenient, mobile phone-based point of sale (POS) system that includes the terminal, portable printer and a backend system that provides live authorization to banks and processors. MTTs are a highly convenient and cost effective alternative to traditional point of sale equipment.

8. Fractal is in the business of commercializing and licensing technologies for mobile commerce and electronic payment systems as defined in certain patents under which Fractal hold rights. Among those technologies is an intelligent switching apparatus known to the parties as V-SIM Core Technology.

9. Fractal was granted exclusive rights in at least certain of these technologies by an agreement with an entity called Aussie L.L.C. PTY Ltd. (the "Fractal/Aussie Agreement").

10. On February 20, 2002, Fractal and WAY entered into a license agreement ("Prior License Agreement") whereby WAY was assigned non-exclusive worldwide rights to use the technologies which the Fractal/Aussie Agreement had assigned to Fractal.

11. On October 24, 2003, WAY and Fractal entered into a license agreement ("License Agreement") in which, among other things, Fractal licensed to WAY the exclusive rights to develop, manufacture, and market merchant point of sale ("MPOS") devices using the V-SIM Core Technology.

12. Since February 2002, WAY has been engaged in a comprehensive research and development program for the design, manufacture, marketing and sale of MTT solutions which include hardware, firmware and server technology that are currently used with Fractal's V-SIM Core Technology. WAY has focused much of its research and development on MPOS devices used by merchants to accept consumer payment cards.

13. WAY's efforts have resulted in the invention and development of new and different technologies toward the advancement of MPOS devices and payment systems, and it has applied to the United States Patent and Trademark Office for patents on numerous inventions.

14. WAY's patent applications were filed prior to the parties' execution of the License Agreement.

15. Defendant Benson claims to be an inventor of one or more of the technologies described by WAY's patent applications.

16. Article 2 of the License Agreement grants to Fractal, *inter alia*, a non-exclusive license to unlimited copies of WAY's Back-End Server Software for the support of a certain number of MPOS devices and other personal point of sale devices defined as "PPOS," as well as other consideration, and Article 3 requires that WAY give additional valuable consideration to Fractal in the form of, among other things, preferred stock warrants, one-time license fee payments totaling $400,000, and royalty payments.

17. Pursuant to Section 8.1, the term of the License Agreement "is a perpetual Term (except as to [Fractal's] Patents, at [*sic*] to which the license hereunder shall be limited to the life of such Patents and jurisdictions which so require), unless terminated pursuant to this Article." Under Section 8.2, either party may terminate the License Agreement only where the other has committed a material breach and either (i) "the breach is incurable," or (ii) the breaching party "fails to cure such breach within sixty (60) days of receiving Notice of default from [the non-breaching party]."

18. On June 30, 2004, WAY and Fractal executed an Amendment and Waiver to the License Agreement ("June 2004 Amendment"). The June 2004 Amendment provided WAY an extension of time to make certain payments under the License Agreement in exchange for providing Fractal with the source code and other information for the "MTT 1500" device developed by WAY.

19. Subsequently, Fractal and WAY have encountered a variety of issues related to the License Agreement, and WAY has always negotiated in good faith to resolve any differences between the parties.

20. On numerous occasions, both orally and in writing, Fractal has asserted unfounded allegations that WAY was in material breach of the License Agreement without specifying what actions Fractal claimed constituted material breaches.

21. WAY responded to Fractal's unsupported allegations and pursued discussions with Fractal's President, Benson, to resolve any disagreements.

22. On November 11, 2004, WAY's CEO and President, Will Graylin ("Graylin"), met with Benson at WAY's office in Woburn, Massachusetts. Benson told Graylin that there would be no more negotiations about the issues involving the License Agreement. Instead, Benson stated that he would send to Graylin a proposed second amendment to the License Agreement (the "Proposed Second Amendment") and that, if WAY did not execute the Proposed Second Amendment, Fractal would terminate the License Agreement and file legal action against WAY in Virginia's so-called "rocket docket" court to put WAY out of business. Finally, Benson threatened that he, personally, would come to Massachusetts and lock the doors to WAY's office.

23. Benson sent the Proposed Second Amendment to Graylin on November 19, 2004. The Proposed Second Amendment represents significant and material changes in numerous fundamental terms of the License Agreement, all in favor of Fractal and to the great detriment of WAY, including, but not limited to, the following:

    (a) A requirement that WAY would grant to Fractal all intellectual property rights in WAY's patent applications and any other WAY patent application technologies that rely on or refer to Fractal's technology, intellectual property, confidential information, or know how; and

(b) A requirement, in essence, that WAY abrogate the control over product design that was granted to it in the License Agreement.

24. WAY refused to sign the Proposed Second Amendment, yet Benson has asserted that Fractal owns all rights in and to WAY's patent applications.

25. In addition, Benson has asserted that at least one of the WAY patent applications was directed to Fractal or Benson invention(s) communicated to WAY and, then, claimed by WAY as its own.

26. In spite of WAY's continued efforts to communicate with Fractal in a reasonable manner to resolve the parties' disputes, Benson remained adamant that, if the Proposed Second Amendment was not executed by WAY, he would take steps necessary to terminate the License Agreement and put WAY out of business.

27. At all relevant times, Fractal knew and understood that WAY's business plan and future success rely on the License Agreement, including WAY's rights to use Fractal's V-SIM Core Technology. Since February 2002, WAY has spent in excess of approximately $11 million to develop its business.

28. On November 24, 2004, Benson called Graylin and again threatened that if WAY did not agree to execute the Proposed Second Amendment, Fractal would send a notice of termination and file a lawsuit in Virginia. Benson reiterated his previous threat that he would personally fly to Boston to shut WAY down.

29. In order to protect its rights, in November 2004, WAY filed a complaint in the United States District Court for the District of Massachusetts (Civil Action No. 04-12498-JLT) (the "Federal Court Action"), and a separate complaint in Massachusetts Superior Court (Civil Action No. 04-5175-BLS) (the "State Court Action") (collectively, the "Lawsuits"). Among

other things, the Lawsuits sought declarations that WAY was not in breach of the License Agreement and that WAY – not Fractal or Benson – owned and invented the technology described by its patent applications.

30. Shortly after the Lawsuits were commenced, on December 23, 2004, the parties entered into a Standstill Agreement (the "Standstill Agreement"), which established a "Standstill Period" of 90 days, "to give the parties the opportunity to conduct good faith negotiations in an effort to resolve all disputes and issues between them."

31. Pursuant to the Standstill Agreement, the parties agreed that, during the 90-day Standstill Period, neither would make any filings with or seek relief in any state or federal court.

32. The Standstill Agreement also expressly provides that:

> Fractal agrees and represents that the amendments to the License Agreement previously discussed will be set aside and the parties will commence negotiations in good faith open to any potential form of resolution that is acceptable to the parties. *Fractal does not now, and will not in the future, insist that the Second Amendment is a basis of resolution of disputes and issues between the parties or that the License Agreement will be terminated if WAY Systems is unwilling to execute the Second Amendment without modification.*

Standstill Agreement ¶ 2 (emphasis added).

33. Pursuant to the Standstill Agreement, throughout early 2005, WAY attempted in good faith to negotiate with Fractal and Benson to resolve the issues between the parties.

34. In the spirit of cooperation embodied by the Standstill Agreement, on January 14, 2005, WAY filed a notice of voluntary dismissal with the Superior Court, voluntarily dismissing the State Court Action, without prejudice. On March 17, 2005, WAY filed a similar notice dismissing the Federal Court Action, without prejudice.

35. Nevertheless, Benson demanded that three of WAY's pending patents be unconditionally assigned to Fractal. When WAY refused to accede to this demand, Benson

again threatened to terminate the License Agreement, stating that such termination could be avoided only if WAY signed the Proposed Second Amendment and assigned the patents.

36. The Standstill Period established by the Standstill Agreement expired on March 18, 2005. Benson rejected WAY's suggestion that the parties extend the Standstill Agreement to continue good faith negotiations and resolve differences amicably.

37. On April 28, 2005, Benson followed through with his threat and, on behalf of Fractal, sent WAY a purported notice of termination (the "Notice of Termination"), claiming that WAY's application for patents constituted an incurable material breach of the License Agreement, and that WAY "has infringed on the licensors intellectual property rights by filing patents which are indisputably linked to the licensors technology . . . ." Fractal made this assertion notwithstanding that WAY applied for its patents before WAY and Fractal entered into the License Agreement.

38. No valid basis exists for Fractal's purported termination of the License Agreement. At all times, WAY has materially performed its obligations under the License Agreement and has satisfied all conditions precedent.

39. While Fractal's stated basis for its Notice of Termination was that WAY had violated the License Agreement by seeking patents on its inventions, Fractal has also raised controversies concerning two other aspects of the License Agreement that bear heavily on WAY's business: (1) relations with distributors, and (2) maintenance of exclusivity rights through royalty payments.

40. Benson has claimed that reseller agreements WAY has executed with certain distributors violate section 2.3 of the License Agreement, which permits sublicensing "to distributors, channel partners, and other resellers in connection with the marketing, sale, offering

for sale, distribution, support, and maintenance of the Licensee's MPOS Devices within the Territory."

41. The reseller agreements in question do not constitute sublicenses and do not violate section 2.3 of the License Agreement.

42. Attachment E to the License Agreement sets forth "Global Performance Criteria" relating to aggregate minimum sales of WAY's MPOS devices, for purposes of determining royalty payments owed to Fractal.

43. Attachment E states that WAY "shall have the right and option to maintain rights of exclusivity under this Agreement by prepaying Royalties applicable to the minimum number of MPOS Devices required to be sold in a given Accounting Period." Although the License Agreement does not specify when such royalty payments must be made, the parties intended that such payments be made at the end of each calendar year. Consistent with such intent, Fractal did not request payment of royalties at the beginning of 2004.

44. At the end of 2004, aggregate sales (totaling 510 units) were well below the minimum (20,000 units) set forth in Attachment E. Consequently, to secure its rights of exclusivity pursuant to the License Agreement, WAY paid Fractal a sum of $160,000 in royalties on December 27, 2004.

45. Again consistent with the parties' intent, Fractal did not request payment of royalties at the beginning of 2005. However, in March 2005, Fractal, for the first time ever, proffered its claim that WAY's exclusivity as licensee had lapsed because WAY had not yet paid its royalties for 2005.

## COUNT I
### Declaratory Judgment
(Inventor of the Technology Described by
the WAY Patent Applications - 35 U.S.C. § 116)

46. WAY realleges and incorporates the allegations in paragraphs 1 through 45 as if fully set forth herein.

47. WAY has applied to the United States Patent and Trademark Office for federally registered patents on numerous inventions.

48. Benson has asserted that he is the inventor of the technology identified in one or more of the WAY patent applications.

49. An actual controversy exists as to the true and rightful inventor of the technology identified in the WAY patent applications.

50. This dispute has caused, and will continue to cause, substantial loss to WAY. A declaratory judgment is appropriate because it will serve a useful purpose in clarifying and settling the dispute, and it will terminate and afford relief from the uncertainty, insecurity, and controversy between the parties.

## COUNT II
### Declaratory Judgment
(Ownership of Technologies Described by the WAY Patent Applications)

51. WAY realleges and incorporates the allegations in paragraphs 1 through 50 as if fully set forth herein.

52. WAY has applied to the United States Patent and Trademark Office for federal registration of patents on numerous inventions.

53. Fractal and Benson have repeatedly asserted that Fractal is the rightful owner of the technologies identified in WAY's patent applications, an assertion that WAY vehemently denies.

54. An actual controversy exists as to the true and rightful owner of the technology identified in the WAY patent applications.

55. This dispute has caused, and will continue to cause, substantial loss to WAY. A declaratory judgment is appropriate because it will serve a useful purpose in clarifying and settling the dispute, and it will terminate and afford relief from the uncertainty, insecurity, and controversy between the parties.

## COUNT III
### Declaratory Judgment
(License Agreement Remains in Full Force and Effect)

56. WAY realleges and incorporates the allegations in paragraphs 1 through 55 as if fully set forth herein.

57. The October 24, 2003 License Agreement is a contract between WAY and Fractal.

58. Under terms of the License Agreement, neither party is entitled to terminate the Agreement absent a material breach by the other party.

59. Fractal and Benson have repeatedly alleged, without just basis, that WAY materially breached the License Agreement. Fractal and Benson made their repeated allegations in spite of WAY's demonstration that no such breaches have occurred.

60. Fractal has threatened to terminate and has purported to terminate the License Agreement based on its unsupported allegations of material breaches.

61. An actual controversy exists as to whether WAY materially breached the License Agreement, whether Fractal is or was entitled to terminate the License Agreement, and whether Fractal's purported termination of the License Agreement is effective.

- 11 -

62.     This dispute has caused, and will continue to cause, substantial loss to WAY.  A declaratory judgment is appropriate because it will serve a useful purpose in clarifying and settling the dispute, and it will terminate and afford relief from the uncertainty, insecurity, and controversy between the parties.

**COUNT IV**
**Declaratory Judgment**
(Coercion)

63.     WAY realleges and incorporates the allegations in paragraphs 1 through 62 as if fully set forth herein.

64.     Fractal and Benson know and understand that the success of WAY's business depends on Fractal's good faith continuation of the License Agreement.

65.     Fractal and Benson have unfairly and unlawfully leveraged Fractal's contractual advantage by threatening and purporting, without just basis, to terminate the License Agreement unless WAY executes the Proposed Second Amendment.

66.     The Proposed Second Amendment represents significant and material changes in numerous fundamental terms of the License Agreement, all in favor of Fractal and to the great detriment of WAY.

67.     Fractal has offered no valuable consideration in exchange for WAY's execution of the Proposed Second Amendment.

68.     WAY has refused to execute the Proposed Second Amendment.

69.     An actual controversy exists as to whether Fractal and Benson's threats constitute unlawful coercion that render ineffective Fractal's threatened and purported termination of the License Agreement.

70. This dispute has caused, and will continue to cause, substantial loss to WAY. A declaratory judgment is appropriate because it will serve a useful purpose in clarifying and settling the dispute, and it will terminate and afford relief from the uncertainty, insecurity, and controversy between the parties.

## COUNT V
### Breach of the Implied Covenant of Good Faith And Fair Dealing

71. WAY realleges and incorporates the allegations in paragraphs 1 through 70 as if fully set forth herein.

72. The October 24, 2003 License Agreement is a contract between WAY and Fractal.

73. The License Agreement includes an implied covenant of good faith and fair dealing.

74. Fractal and Benson's conduct described herein, including, among other things, threats to terminate the License Agreement, purported termination of the License Agreement, and coercive attempts described above to require the execution of an amendment to the License Agreement are arbitrary and unreasonable acts that have the effect of preventing WAY from receiving the bargained-for benefits of the License Agreement, all in breach of the implied covenant of good faith and fair dealing.

75. As a direct result of Fractal and Benson's conduct, WAY has suffered substantial damages in an amount to be determined at trial.

## COUNT VI
### Violation of M.G.L. c. 93A

76. WAY realleges and incorporates the allegations in paragraphs 1 through 75 as if fully set forth herein.

77. WAY, Fractal and Benson are each engaged in trade or commerce within the meaning of M.G.L. c. 93A.

78. Fractal and Benson have engaged in unfair and deceptive acts, including, but not limited to, commercial extortion, through bad faith threats to terminate the License Agreement, bad faith purported termination of the License Agreement, bad faith threats to commence litigation, and otherwise to destroy WAY's business unless WAY executes the Proposed Second Amendment, which contains new and material terms all in favor of Fractal and to the great detriment of WAY.

79. Fractal and Benson have committed their unfair and deceptive acts or practices in bad faith and knowingly and willfully. Fractal and Benson know that WAY's business relies on good faith continuation of the License Agreement. In spite of this knowledge, Fractal and Benson have employed coercive and oppressive tactics involving bad faith threats of termination of the License Agreement, bad faith purported termination of the License Agreement, and bad faith threats of litigation as a means of taking wrongful advantage of WAY's vulnerable position and forcing WAY, without consideration, to enter into the Proposed Second Amendment.

80. Fractal and Benson's acts occurred primarily and substantially in the Commonwealth of Massachusetts.

81. Fractal and Benson's conduct has caused WAY to suffer substantial damages in an amount to be determined at trial.

## COUNT VII
### Breach of Standstill Agreement

82. WAY realleges and incorporates the allegations in paragraphs 1 through 81 as if fully set forth herein.

83. Fractal entered into a Standstill Agreement with WAY pursuant to which Fractal agreed that it "does not now, and will not in the future, insist that the Second Amendment is a basis of resolution of disputes and issues between the parties or that the License Agreement will be terminated if WAY Systems is unwilling to execute the Second Amendment without modification."

84. Fractal breached its agreement with WAY by threatening to terminate the License Agreement – which Fractal knew was essential to WAY's business – unless WAY capitulated to Fractal's demand for the Proposed Second Amendment.

85. As a proximate result of Fractal's breach of contract, WAY has suffered damages, and continues to suffer damages, in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, WAY respectfully requests that the Court:

1. Enter judgment as to Count I and declare that the named inventors are the true and rightful inventors of the technologies identified in WAY's patent applications pursuant to 35 U.S.C. § 116;

2. Enter judgment as to Count II and declare that WAY is the true and rightful owner of the technologies identified in its patent applications;

3. Enter judgment as to Count III and declare that WAY has not materially breached the License Agreement, that Fractal is not entitled to terminate the License Agreement, and that the License Agreement remains in full force and effect;

4. Enter judgment as to Count IV and declare that Fractal and Benson have engaged in oppressive and coercive tactics in attempting to force WAY to execute the Second Proposed Amendment, and that Fractal and Benson's threatened and purported termination is ineffective;

5.    Enter preliminary and/or permanent injunctive relief ordering Fractal and Benson to refrain from taking any actions that are inconsistent with WAY's rights under the License Agreement;

6.    Enter judgment as to Count VI and declare that the Defendants have willfully and intentionally engaged in one or more deceptive acts or practices in violation of M.G.L. c. 93A and award WAY damages in an amount to be determined at trial, trebled, together with interest, costs, and attorneys' fees;

7.    Enter judgment as to the remaining Counts and award WAY its damages in an amount to be determined at trial together with interest and costs; and

8.    Order such other and further relief as the Court deems just and reasonable.

## JURY DEMAND

WAY DEMANDS A TRIAL BY JURY ON ALL COUNTS SO TRIABLE.

WAY SYSTEMS, INC.

By Its Attorneys,

DATE: May 27, 2005

/s/ David S. Godkin
David S. Godkin (BBO 196530)
BIRNBAUM & GODKIN, LLP
268 Summer Street
Boston, MA  02210
Tel: 617-542-3100
Fax: 617-542-3111